IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DONOVAN MALLORY,

Plaintiff,

v.

JASON SMITH; LOGAN NICHOLS; RACHEL BIVENS,

Defendants.

Civ. No. 6:24-cv-01116-AA

**OPINION & ORDER**

---

AIKEN, District Judge.

This case comes before the Court on Plaintiff's Renewed Motion for Default Judgment. ECF No. 45. The Court concludes that this motion is appropriate for resolution without oral argument. For the reasons set forth below, the motion is GRANTED in part and DENIED in part. Default judgment shall be entered for Plaintiff in the amount of $104,607.50 for which Defendants are jointly and severally liable.

## LEGAL STANDARD

Following the clerk's entry of default under Federal Rule of Civil Procedure 55(a), the general rule is that the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (internal quotation marks and

citation omitted). The court does not, however, accept as admitted legal conclusions or facts that are not well-pleaded. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

After the clerk has entered a defendant's default, the court may enter default judgment against that party. Fed. R. Civ. P. 55(b)(2). The court's decision whether to enter default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has identified seven factors (the "*Eitel* factors") to guide a district court's consideration of whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The "starting point," however, "is the general rule that default judgments are ordinarily disfavored." *Eitel*, 782 F.2d at 1472.

When moving for default judgment, a plaintiff must establish the amount of damages by proof, unless the amount is liquidated or otherwise capable of computation. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

## BACKGROUND

### I. Factual Background

Defendants Jason Smith, Logan Nichols, and Rachel Bivens were members of now-defunct former Defendant Iron Shield, LLC ("Iron Shield"). Am. Compl. ¶¶ 8-9. ECF No. 25. Iron Shield provided uniformed security officers and security services at the customer's place of business. *Id.* ¶ 16. Defendants are subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and Oregon wage and hour laws, ORS Chapters 652 and 653. *Id.* ¶¶ 13-15.

Plaintiff was employed by Iron Shield as a security officer from on or about July 1, 2022, until June 30, 2024. Am. Compl. ¶ 7. As a condition of his employment, Plaintiff was required to create an Oregon limited liability company and agree to be paid as an independent contractor subject to IRS Form 1099 reporting. *Id.* ¶ 17. The economic reality of the relationship between Plaintiff and Defendants was that of employee and employer. *Id.* ¶¶ 19-32. In January 2024, Defendants required Plaintiff to sign an Addendum to Agreement for Security Services which prohibited Plaintiff from performing security services outside of the work assigned to him by Defendants. *Id.* ¶ 28. The Addendum contained non-compete and non-solicitation provisions and was presented to Plaintiff as something he had to sign or find another place to work. *Id.* ¶ 29.

Smith was "regularly present at Defendant Iron Shield's premises, and participated in the management of Iron Shield's day-to-day operations" and "had the power to hire and fire Iron Shield security officers, and otherwise control the terms

of their employment." Am. Compl. ¶ 10. Smith was the one who signed the contract purporting to classify Plaintiff as an independent contractor. *Id.*

Nichols sometimes participated in the management of Iron Shield's day-to-day operations and had the power to hire and fire security guards and otherwise control the terms of their employment. Am. Compl. ¶ 11. Nichols was jointly responsible for the decision to classify Plaintiff as an independent contractor. *Id.*

Bivens participated in the management of Iron Shield and, jointly with Nichols and Smith, controlled the terms of employment for the security officers. Am. Compl. ¶ 12. Bivens was jointly responsible for the decision to classify Plaintiff as an independent contractor. *Id.* Bivens signed the Addendum that purported to reaffirm Plaintiff's status as that of an independent contractor. *Id.*

During his employment with Defendants, Plaintiff earned $25 per hour. Mallory Decl. ¶ 2. ECF No. 46. During the period of his employment, Plaintiff routinely worked more than 40 hours in a workweek and was not paid an overtime rate for the hours exceeding 40 in a workweek. Am. Compl. ¶ 30. Between July 2022 and May 2024, Plaintiff worked a total of 655 hours of overtime for which he was not paid an overtime rate. Leiman Decl. Ex. 1. ECF No. 47.

On June 18, 2024, Plaintiff's counsel notified Iron Shield's former counsel that Plaintiff was asserting that he was misclassified as an independent contractor and that he was claiming the status of an employee and demanding payment of FLSA overtime. Am. Compl. ¶ 33. On June 30, 2024, Iron Shield notified that Plaintiff that his employment was being terminated "because he had hired a lawyer to pursue an

overtime claim[.]" *Id.* ¶ 34, *see also* ¶ 56 (Plaintiff was notified by text message that he was terminated for retaining an attorney to assert his rights under the FLSA).

Plaintiff was unable to secure a new job until August 10, 2024, which resulted in $6,000 in lost wages. Mallory Decl. ¶ 4. Plaintiff eventually secured new employment, but it paid less than he had earned working for Defendants. *Id.* ¶¶ 4-7. Between August 11, 2024, and August 4, 2025, Plaintiff worked for less than the $25 per hour he had earned working for Defendants. *Id.* This resulted in lost wages of $4,990 for a total of $10,990 in lost wages. *Id.* Since his termination, Plaintiff has suffered stress, anxiety, difficulty sleeping, and other emotional harms. *Id.* ¶¶ 9-12.

## II. Procedural Background

Plaintiff commenced this action solely against Defendant Iron Shield on July 8, 2024. ECF No. 1. Iron Shield initially appeared and participated in the litigation but, on November 1, 2024, Iron Shield abruptly terminated its counsel. ECF Nos. 18, 19, 20.

On January 21, 2025, the Court issued an Order to Show Cause directing Iron Shield to secure replacement counsel, as corporate entities cannot proceed pro se. Iron Shield was warned that failure to secure replacement counsel would result in the entry of a default. ECF No. 21. Iron Shield responded by letter in which it informed the Court that it had "closed its doors" and was "in the process of filing for bankruptcy." ECF No. 22.

On February 28, 2025, the Court entered an order of default against Iron Shield and granted Plaintiff leave to amend the complaint. ECF No. 24. On March

3, 2025, Plaintiff filed the operative Amended Complaint naming Smith, Nichols, and Bivens as Defendants in addition to Iron Shield. ECF No. 25. Bivens was served on March 9, 2025, and Smith and Nichols were served on March 10, 2025. ECF Nos. 27, 28, 29.

On April 4, 2025, Iron Shield sent another letter to the Court stating that Iron Shield had filed for Chapter 7 bankruptcy. The letter stated that the individual Defendants "intend to appear personally at such a time as the stay is no longer in effect and we can contest the claims filed individually." ECF No. 30.

On April 7, 2025, the individual Defendants were defaulted on Plaintiff's motion. ECF No. 33.

Plaintiff subsequently sought entry of a default judgment as to the individual Defendants, but not as to Iron Shield. ECF No. 36. The Court denied the motion, as Defendants were alleged to be jointly and severally liable and so a piecemeal judgment was inappropriate. ECF No. 40.

On July 31, 2026, Plaintiff moved to dismiss his claims against Iron Shield with prejudice. ECF No. 43. In that motion, Plaintiff represented to the Court that Iron Shield's Chapter 7 bankruptcy was closed and the trustee had been discharged and that Iron Shield had been administratively dissolved. The Court granted the motion on August 3, 2026, leaving the individual Defendants as the only Defendants in this action. ECF No. 44. On August 10, 2026, Plaintiff filed the pending Renewed Motion for Default Judgment against the individual Defendants. ECF No. 45. Defendants have not appeared or otherwise defended in this action.

## DISCUSSION

In the Amended Complaint Plaintiff brings claims for (1) overtime violations under the FLSA, 29 U.S.C. § 207; (2) Oregon wage and hour law violations pursuant to ORS 652.140; and (3) FLSA retaliation pursuant to 29 U.S.C. § 215(a)(3).

Plaintiff seeks total damages of $109,016, for which Defendants would be jointly and severally liable. This represents unpaid overtime wages, liquidated damages for unpaid overtime, Oregon wage penalties, lost wages for FLSA retaliation, liquidated damages for FLSA retaliation, non-economic damages for FLSA retaliation, and attorney fees. The Court turns to consideration of the *Eitel* factors.

### I. The Possibility of Prejudice to Plaintiff

If default judgment were not granted, Plaintiff would likely be without any recourse for recovery. The denial of a legal remedy would be a consequence of Defendants' failure to appear and defend themselves. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002); *Solano v. Preciado*, 738 F. Supp.3d 1356, 1363-64 (D. Or. 2024). This factor weighs in favor of default judgment.

### II. The Merits of Plaintiff's Claims and the Sufficiency of the Complaint

Plaintiff's Amended Complaint sufficiently states claims for relief, satisfying the second and third *Eitel* factors. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). "Because the clerk has entered default, the well-pleaded allegations of the

complaint are taken as true and are binding against the defaulting party." *Solano*, 738 F. Supp.3d at 1364. The question is therefore whether Plaintiff is entitled to recover on the facts set forth in the Amended Complaint.

In addition, a plaintiff who seeks default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp.2d 1038, 1046 (N.D. Cal. 2010). "Federal Rule of Civil Procedure 55 does not require the court to conduct a hearing on damages, as long as the court ensures that there is an evidentiary basis for the damages awarded in the default judgment order." *Solano*, 738 F. Supp.3d at 1364. Here, Plaintiff has provided his own Declaration and the Declaration of Alan Leiman setting forth an evidentiary basis for the damages sought. The Court finds that the Mallory and Leiman Declarations provide a sufficient basis to assess damages and so an evidentiary hearing is not necessary. The Court will therefore turn to the individual claims.

**A. FLSA individual employer liability**

"Whether an employment relationship exists under the FLSA depends on the 'economic reality' of the employment situation." *Hale v. State of Ariz.*, 967 F.2d 1356, 1364 (9th Cir. 1992). The "economic realities test" looks to four factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

Here, the allegations of the Amended Complaint satisfy the requirements of

the economic realities test to establish that Defendants were Plaintiff's employers. The individual Defendants had the power to hire and fire and/or to control the conditions of Plaintiff's employment. Am. Compl. ¶¶ 10-12. They obliged Plaintiff to form an LLC, although he was not previously in the business of providing security services. *Id.* ¶¶ 17-18. They "directed and controlled the terms and conditions of Plaintiff's work as a Security Officer including, but not limited to, controlling how, when, and where Plaintiff worked as a Security Officer." *Id.* at ¶ 19. Defendants determined Plaintiff's rate of pay and maintained the records for his employment. *Id.* at ¶¶ 30, 32. The Court concludes that the allegations of the Amended Complaint are sufficient to establish that Plaintiff was Defendants' employee under the economic realities.

**B. Defendants are statutory employers under the FLSA**

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). Here, the Amended Complaint alleges that each of the individual Defendants satisfies this definition by alleging that they were members of Iron Shield, LLC with control over daily operations and the conditions of Plaintiff's employment, that Smith and Nichols had control over hiring and firing, and that Smith signed the original contract with Plaintiff, while Bivens signed the Addendum on behalf of Iron Shield. Am. Compl. ¶¶ 10-12. This is sufficient to establish that Defendants were "employers" within the meaning of § 203(d) of the FLSA.

**C. FLSA overtime**

The FLSA provides that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. An employer who violates § 207 is liable to the employee in the amount of their unpaid overtime compensation and for an equal amount of liquidated damages. 29 U.S.C. § 216(b).

Here, the allegations of the Amended Complaint establish that Plaintiff routinely worked more than forty hours per workweek and did not receive overtime pay. Exhibit 1 of the Leiman Declaration sets forth Plaintiff's overtime hours, which total 655, and the unpaid one-and-a-half overtime rate, which amounts to $12.50, for a total of $8,192.50 in unpaid overtime wages. The Court discovered what appears to be an error in Plaintiff's calculations for the pay period of October 3, 2022, to October 9, 2022, in which Plaintiff listed his unpaid overtime rate as $15.00, rather than $12.50, which resulted in a five-dollar discrepancy in the final calculation. Leiman Decl. Ex. 1, at 1. The Court finds that the correct sum is $8,187.50. The Court concludes Plaintiff is entitled to unpaid overtime wages in the amount of $8,187.50, and liquidated damages in the same amount for a total award of $16,375 in FLSA overtime damages.

**D. Oregon wage and hour claims**

Plaintiff alleges that Defendants failed to pay Plaintiff's overtime wages when due as required by ORS 652.140, which gives rise to a penalty under ORS 652.150. ORS 652.140 provides that an employer must provide all wages due promptly upon an employee's termination and in all cases before five days from termination. An employer who fails to do so is subject to a civil penalty as calculated in ORS 652.150. The facts that give rise to the claim for unpaid wages under the FLSA also support this claim in that they show Plaintiff was owed overtime wages at the time of his termination and they were not paid.

Under ORS 652.150, if an employer fails to pay the wages when due, then "as a penalty for nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until an action therefore is commenced," but "[i]n no case shall the penalty wages or compensation continue for more than 30 days from the due date." ORS 652.150(1).

Here, Plaintiff seeks $6,000 under ORS 652.150(1), which is his $25 hourly wage, calculated for thirty full eight-hour days. However, ORS 652.150(1) provides that the penalty wages accrue until paid "or until an action therefore is commenced." Plaintiff alleges that he was terminated on June 30, 2024. Am. Compl. ¶ 37; Mallory Decl. ¶ 3. Plaintiff commenced this action only eight days later, on July 8, 2024. ECF No. 1. Plaintiff's penalty wages under ORS 652.150(1) are therefore capped at the equivalent of eight full workdays, or $1,600. The Court

concludes that Plaintiff is entitled to $1,600 in Oregon wage penalties under ORS 652.150.

**E. FLSA retaliation claim**

Section 215 of the FLSA provides that is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]" 29 U.S.C. § 215(a)(3).

Here, Plaintiff was terminated shortly after his attorney contacted Defendants about Plaintiff's misclassification as an independent contractor and Defendants subsequently told Plaintiff that his termination was a direct result of his commencement of an action for unpaid wages. Am. Compl. ¶¶ 34, 55-56. The Court concludes that this is sufficient to sustain a claim for FLSA retaliation.

Any employer who violates § 215(a)(3) "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of § 215(a)(3)," including, without limitation, "payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Emotional damages may also be awarded for retaliation under the FLSA. *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999). Here, Plaintiff seeks $10,990 in lost wages and an equal amount of liquidated damages. Plaintiff also seeks $25,000 in non-economic damages for the emotional distress caused by the termination.

As set forth in the Mallory Declaration, Plaintiff was unable to secure employment from his termination until August 10, 2024, and was unable to secure

employment that paid him wages equivalent to what he earned working for Defendants until August 4, 2025. Mallory Decl. ¶¶ 3-8. Plaintiff seeks lost wages for the period of unemployment and the difference between his subsequent wages and what he would have earned working for Defendants. The Court concludes that Plaintiff is entitled to $10,990 in lost wages and an equal amount as liquidated damages.

Plaintiff has supplied, through his own Declaration, evidence of the emotional toll of his retaliatory termination. Mallory Decl. ¶¶ 9-12. The Court concludes that the requested amount is reasonable and supported by evidence. Plaintiff shall be awarded a total of $46,980 for his FLSA retaliation claim, constituting $10,990 in lost wages, $10,990 in liquidated damages, and $25,000 in non-economic damages.

In sum, the Court concludes that the second and third factors weigh in favor of default judgment.

## III. The Sum of Money at Stake

Courts must also consider "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp.2d at 1176-77; *see also Solano*, 738 F.Supp.3d at 1370 (same). Here, the total amount sought, including attorney fees, is $109,016. The Court concludes that this sum is proportional to Defendants' alleged conduct. This factor weighs in favor of default judgment.

## IV. The Possibility of a Dispute Concerning Material Facts

Defendants have been properly served but have not appeared in this case. Without an appearance by Defendants and the presentation of their version of the facts, or any countervailing evidence, and because all well-pleaded allegations are deemed true after entry of default, there is no likelihood that any genuine issue of material fact exists after default. *Solano*, 738 F. Supp.3d at 1370. This factor weighs in favor default judgment.

## V. Whether the Default Was Due to Excusable Neglect

There is no evidence that Defendants' failure to appear and defend was a consequence of excusable neglect. Defendants were demonstrably aware of this action as evidenced by the letters sent to the Court on Iron Shield letterhead but Defendants still failed to appear or defend. This factor weighs in favor of default judgment.

## VI. The Policy of Favoring Decisions on the Merits

The policy favoring decisions on the merits will generally weigh against default judgment but, standing alone, it is not dispositive. *Solano*, 738 F. Supp.3d at 1370. Defendant's failure to appear and defend has made a decision on the merits impossible. This factor will not preclude the entry of default judgment.

## VII. Attorney Fees

Section 216 of the FLSA provides that the court "in such action [under the FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and costs of the action." 29

U.S.C. § 216(b). Here, Plaintiff seeks attorney fees in the amount of $39,652.50.

Attorney fees are calculated using the lodestar method, which multiplies the number of hours worked by a reasonable hourly rate. *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010). Reasonable hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gonzales v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013) (internal quotation marks and citation omitted). The Oregon State Bar Economic Survey documents the rates charged by Oregon attorneys and serves as a benchmark for assessing the reasonableness of attorney billing rates in Oregon. *Precision Seed Cleaners v. County Mut. Ins. Co.*, 976 F. Supp.2d 1228, 1244 (D. Or. 2013).

Courts exclude hours that are "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (internal quotation marks and citation omitted). The party seeking fees bears the burden of documenting the appropriate hours expended in the litigation and is required to submit evidence in support of those hours worked. *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of Asarco, Inc.*¸512 F.3d 555, 565 (9th Cir. 2008).

In addition, the Ninth Circuit has instructed courts to consider the *Kerr* factors,[1] which are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly,

[1] *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir. 1975).

(4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the “undesirability” of the case, (11) the nature and length of the professional relationship with the client, and (1) awards in similar cases. *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988).

Here, Plaintiff seeks to recover for 93.30 hours worked by Plaintiff's counsel Alan Leiman at a rate of $425 per hour. Mr. Leiman has been an attorney since 1992 and has considerable experience as a litigation attorney and particularly in litigating FLSA and Oregon wage and hour claims. Leiman Decl. ¶¶ 5-7. The Court has reviewed the Oregon Bar Economic Survey and concludes that the claimed rate is comfortably within the range of rates customarily charged by attorneys of Mr. Leiman's experience and in his area of practice.

The Court has also reviewed the claimed hours and concludes that they were reasonably incurred. The Court finds no cause to reduce the requested hours. The full requested amount of attorney fees shall be awarded.

**CONCLUSION**

For the reasons set forth above, the Renewed Motion for Default Judgment, ECF No. 45 is GRANTED in part and DENIED in part. Default judgment is entered for Plaintiff and against Defendants in the amount of $104,607.50, for which Defendants are jointly and severally liable. This award represents $8,187.50 in FLSA

overtime wages, $8,187.50 in liquidated damages on the FLSA overtime claim, $1,600 in Oregon wage penalties, $10,990 in lost wages for the FLSA retaliation claim, $10,990 in liquidated damages for the FLSA retaliation claim, $25,000 in non-economic damages for the FLSA retaliation claim, and $39,652.50 in attorney fees. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 24th day of August 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge